In the
United States Court of Appeals
For the Seventh Circuit

No. 00-1207

ESTATE OF EDWARD KUNZE, DECEASED,
Carol Ann Hause, Executor,

Petitioner-Appellant,

v.

COMMISSIONER OF INTERNAL REVENUE,

Respondent-Appellee.

Appeal from a Decision of the
United States Tax Court
No. 16583-98

Argued September 20, 2000--Decided November
16, 2000

   Before COFFEY, EASTERBROOK, and EVANS,
Circuit Judges.

   EVANS, Circuit Judge.  Edward J. Kunze
died on December 18, 1992. The after-tax
net worth of his estate at the time of
his death was approximately $2.5 million.
This amount is uncontested. Nine months
after Edward's Estate filed its tax
return, an audit, which eventually lasted
21 months, was started. During the long
audit, interest of $21,701.57 accrued.

   On July 29, 1996, the Estate filed a
petition with the IRS requesting an
abatement of this interest charge by
invoking 26 U.S.C. sec. 6404./1
Exercising its discretion, the IRS denied
the request and the Estate filed this
suit in the U.S. Tax Court for review of
the denial. The IRS filed a motion to
dismiss for lack of jurisdiction, arguing
that the net worth of the estate as of
the date of Kunze's death exceeded the
jurisdictional/2 limit of $2 million.
The Tax Court agreed and dismissed the
case.

On appeal to us, the Estate argues that due to a convoluted series of cross-references in the Internal Revenue Code, the Tax Court applied the wrong statute in determining subject matter jurisdiction. It also alleges that the jurisdictional requirement, limiting judicial review of abatements to estates valued at more than $2 million, is unconstitutional both on its face and as applied.

We have jurisdiction over this appeal under 26 U.S.C. sec. 7482(a). We apply the same standard of review to a Tax Court decision that we apply to district court determinations in a civil bench trial: We review questions of law de novo; we review factual determinations, as well as applications of legal principles to those factual determinations, only for clear error. Eyler v. Commissioner of Internal Revenue, 88 F.3d 445, 448 (7th Cir. 1996).

Internal Revenue Code sec. 6404 grants the Tax Court jurisdiction to review abatement of interest denials if the appealing party meets the requirements of sec. 7430(c)(4)(A)(ii)./3 Section 7430(c)(4)(A)(ii) references the requirements of 28 U.S.C. sec. 2412(d)(2)(B), which, for purposes of an award of attorneys fees and litigation costs, defines party as "an individual whose net worth did not exceed $2 million at the time the civil action was filed." However, 28 U.S.C. sec. 2412(d)(2)(B) refers to the maximum net worth of an individual or corporation seeking to bring suit and not the maximum net worth of an estate. Here, the Estate, not an individual, brought suit. Thus, the Tax Court applied another subsection of 7430--sec. 7430(c)(4)(D)--which provides "special rules" for applying the net worth requirement of 28 U.S.C. sec. 2412(d)(2)(B) "for purposes of section 7430(c)(4) (A)(ii)." The special rules outlined in sec. 7430(c)(4)(D) state that the $2 million net worth limitation set forth in sec. 7430(c)(4)(D) shall apply to an estate and shall be calculated at the time of the decedent's death. (Emphasis added.)

The Estate contends that instead of calculating the net worth of the estate when Kunze died in 1992, as required by sec. 7430(c)(4)(D), the Tax Court should have followed the requirements of 28 U.S.C. sec. 2412(d)(2)(B) and calculated the Estate's value when it filed suit against the IRS 6 years later, in 1998. The Estate argues that sec. 7430(c)(4)(D) was inapplicable because sec. 6404(i)(1) refers only to subsection 7430(c)(4)(A)(ii) and not to subsection 7430(c)(4)(D). Moreover, it contends that the IRS was estopped from contesting jurisdiction because the Estate relied on misinformation provided by an IRS employee. Finally, the Estate argues that sec. 7430(c)(4)(D) did not apply to sec. 7430(c)(4)(A)(ii) because the unamended version of (4)(D) referenced a nonexistent subsection of 7430(c)(4)(A)(ii).

We find that all three of these arguments are unpersuasive and conclude that the Tax Court correctly applied the jurisdictional limitations set forth in sec. 7430(c)(4)(D). Moreover, even were we to disregard sec. 7430(c)(4)(D) and calculate the estate's net worth at the time the action was filed, as required by 28 U.S.C. sec. 2412(d)(2)(B), the result would remain unchanged. The Estate's contention that its net worth at the time it filed suit was less than $2 million is based on the mistaken assumption that, in calculating its net worth, the IRS should exclude the value of assets distributed upon the death of the decedent. However, we have rejected this calculus and held that for the purpose of sec. 7430 the valuation of an estate must encompass all assets, including those distributed prior to litigation. Estate of Woll v. United States, 44 F.3d 464, 470 (7th Cir. 1994). Thus, regardless of which statute applied, the net worth of the estate exceeded $2 million; therefore, the Tax Court lacked jurisdiction.

The Estate is correct in noting that sec. 6404(i)(1) does not directly reference sec. 7430(c)(4)(D) and instead refers to sec. 7430(c)(4)(A)(ii). This section, (A)(ii), in turn, incorporates the requirements of 28 U.S.C. sec. 2412(d)(2)(B). Unfortunately, 28 U.S.C.

sec. 2412 does not direct the reader back to sec. 7430. However, because 28 U.S.C. sec. 2412(d)(2)(B) refers to individuals, corporations, partnerships, associations and their like, but not estates, the reader is on notice that this statute alone does not establish the jurisdictional requirements for estates.

In fact, sec. 7430 provides special rules for estates. Section 7430(c)(4)(D) specifically references sec. 7430(c)(4)(A)(ii) and states that 4(D) provides "special rules" for applying the net worth requirement of sec. 2412(d)(2)(B) "for purposes of the subparagraph (A)(ii) of this paragraph." Thus, sec. 7430 establishes that subparagraph (4)(D) applies to sec. 7430(c)(4)(A)(ii) for determining jurisdictional limits.

Granted, the series of back and cross-references presented in this case is not a model of clarity. However, such meanderings are not uncommon in the Tax Code and have been known to provide lifetime employment, if not enjoyment, to tax attorneys. Here, the Tax Court adeptly followed the trail of cross-references, applied the appropriate statute, and correctly determined that it lacked subject matter jurisdiction.

The Estate also argued that the IRS should be estopped from raising the issue of subject matter jurisdiction. In a final determination letter sent in April 1998, the IRS denied the Estate's petition for interest abatement and erroneously stated that the Estate could file for court review, provided "your net worth . . . not exceed $2 million as of the filing date of your petition for review." The Estate argues that the court should have deferred to the IRS's erroneous letter and determined the net worth of the estate at the time it filed suit in 1998.

However, the Estate cannot manufacture subject matter jurisdiction based solely on a government agent's misinterpretation of tax statutes. See Commissioner v. Schleier, 515 U.S. 323, 336 n.8 (1995) (interpretative ruling by the IRS cannot be used to "overturn the plain language

of a statute"). Moreover, we have held that estoppel will not operate against the government where a plaintiff has relied on the erroneous advice of a government agent. Cheers v. Secretary of Health, Education, and Welfare, 610 F.2d 463, 469 (7th Cir. 1979) ("Parties dealing with the Government are charged with knowledge of and are bound by statutes and lawfully promulgated regulations despite reliance to their pecuniary detriment upon incorrect information received from Government agents or employees.").

Here, the Estate's argument that greater deference should have been given to the final determination letter is unavailing. The Estate was represented by counsel, and its failure to decipher the Tax Code cannot be excused by its reliance on a government employee's error. The Tax Court correctly held that a mistake on the part of an IRS agent did not confer subject matter jurisdiction where there existed no statutory basis for judicial review.

The Estate also argues that sec. 7430(c)(4)(D) should not have applied because in April 1998, when it received the IRS letter denying abatement, the unamended version of sec. 7430(c)(4)(D) referenced a nonexistent subsection of sec. 7430, namely, sec. 7430(c)(4)(A)(iii)./4 Because subsection 7430(c)(4)(A)(iii) did not exist, the Estate argues that the limits set forth in sec. 7430(c)(4)(D) should be ignored and we should look to 28 U.S.C. sec. 2412(d)(2)(B) to determine subject matter jurisdiction.

This argument fails on two counts. First, Congress amended sec. 7430(c)(4)(D) on July 22, 1998, 2 months before the Estate filed suit in October. Thus, even if the typographical error had caused confusion, the Estate had access to the corrected version of (4)(D) before it filed suit.

Moreover, the error is so transparent that the Estate can hardly claim to have been bamboozled. The unamended version of sec. 7430(c)(4)(D) incorrectly referred

to subparagraph (iii) instead of subparagraph (ii). However, subparagraph sec. 7430(c)(4)(A)(ii) still set forth the relevant jurisdictional limitations. In turning to subsection (4)(A), a reader would realize that the subparagraph had been misnumbered, but would not be surprised by the intent of subsection 4(A).

Nevertheless, the Estate suggests that we should read the subsection literally and simply conclude that it no longer applies. There are limits to literalism. Generally, each word of a statute is given effect unless the provision is the result of an obvious mistake or error. See 2A Norman J. Singer, Sutherland Statutory Construction sec. 46.06 (6th ed. 2000). Such is the case here. The erroneous cross-reference in (4)(D) to a misnumbered subparagraph in (4)(A) can hardly be construed to have changed the legislative intent of sec. 7430(c)(4)(D) or to have affected the substantive rights of the parties. The import of the subsection remains clear, in spite of the typo. Thus, we reject the Estate's suggested interpretation.

Finally, we consider the underlying premise of the Estate's argument that its net worth when it filed suit in October 1998 was less than $2 million. The Estate contends that between the time of Kunze's death in 1992 and when it filed suit 6 years later in 1998, all the assets of the estate were distributed; thus its remaining net worth was $21,701.57--the amount of interest abatement sought by the Estate. Based on this valuation, the Estate argues that at the time it filed suit, it satisfied the jurisdictional requirements of 28 U.S.C. sec. 2412(d)(2)(B).

Unfortunately, the Estate has miscalculated. In deciding whether an estate was eligible for attorneys fees and costs under sec. 7430 and 28 U.S.C. sec. 2412(d)(2)(B), we held that the net worth of an estate at the time suit was filed must include all assets--even assets that had been distributed prior to litigation. Estate of Woll v. United States, 44 F.3d 464, 470 (7th Cir. 1994). We reasoned that to decide otherwise would result in an arbitrary and unfair

determination of whether an estate was eligible for litigation costs based on what assets remained. Id. at 469-70. Moreover, by not including the value of distributed assets, estate administrators could manipulate the timing of distributions and litigation against the government in order to "duck below the $2 million . . . limit." Id. at 470.

Prior to 1998, the decision to provide or deny interest abatement was left to the sole discretion of the IRS, and the exercise of that discretion was not subject to judicial review. By passing the IRS Restructuring and Reform Act of 1998, Congress created a narrow window of review, limiting court oversight to small estates valued at less than $2 million. If we were to accept the calculus forwarded by the Estate, many more abatement decisions would qualify for judicial review, provided the estates filing suit were clever enough to quickly distribute assets and then seek abatement, thus defeating the jurisdictional limitations enacted by Congress.

We reject the Estate's calculus and conclude that its net worth, both at the time of the decedent's death and when it brought suit, exceeded $2 million. Therefore, regardless of which statute applied, sec. 7430(c)(4)(D) or 28 U.S.C. sec. 2412(d)(2)(B), the Estate did not satisfy the requirements for judicial review, and the Tax Court correctly dismissed the suit.

The Estate also forwards two constitutional challenges. First, it argues that the retroactive application of sec. 7430(c)(4)(D) violates the Due Process Clause of the Fifth Amendment. Second, it contends that there is no rational basis for the $2 million jurisdictional limitation set forth in sec. 6404; thus, the statute violates the equal protection standard imposed on the federal government by the Due Process Clause of the Fifth Amendment.

The Estate argues that its right to seek review accrued in 1998, when it received the IRS final determination letter

denying abatement, and that the retroactive application of the corrected version of sec. 7430(c)(4)(D) violated the Due Process Clause. However, sec. 7430(c)(4)(D) was amended 2 months before the Estate filed suit in October 1998. Thus, the amended section was not applied retroactively, and there was no due process violation. Even assuming the section was retroactively applied, we conclude that the amended statute was consistent with the Due Process Clause.

The Supreme Court "repeatedly has upheld retroactive tax legislation against a due process challenge." United States v. Carlton, 512 U.S. 26, 30 (1994) (citations omitted). The Court has set forth a two-part test for determining whether the retroactive application of a tax statute violates due process. First, for retroactivity to be upheld it must be shown that the statute has a rational legislative purpose and is not arbitrary. Second, the period of retroactivity must be moderate. Id. at 32 (permitting one year retroactivity for tax statute correcting a mistake in prior law).

Here, the amended statute merely served to clarify a drafting error. It was a curative measure that did not impose new tax liabilities or alter the substantive rights of the parties. Congress employed rational means. It acted promptly to correct the error and established only a modest period of retroactivity, 11 months.

Finally, the Estate contends that it was denied a fundamental right of redress. It argues that there was no rational basis for denying a taxpayer, with net worth in excess of $2 million, the right to judicial review of a denial of interest abatement.

Unlike the Fourteenth Amendment, the Fifth Amendment does not contain an Equal Protection Clause. However, the Fifth Amendment's Due Process Clause does contain an equal protection component applicable to the federal government. See Bolling v. Sharpe, 347 U.S. 497, 499 (1954). The scope of the equal protection guarantee under the Fifth Amendment is essentially the same as under the Fourteenth Amendment. See Harris v.

McRae, 448 U.S. 297, 322 (1980).

Statutes affecting economic rights which neither invade a substantive Constitutional right or freedom nor utilize a suspect classification such as race are subject to only a low level of judicial scrutiny--the rational basis test. See Exxon Corp. v. Eagerton, 462 U.S. 176, 195-96 (1983). Under that test "a statute will be sustained if the legislature could have reasonably concluded that the challenged classification would promote a legitimate state purpose." Id. at 196.

Moreover, "[l]egislatures have especially broad latitude in creating classifications and distinctions in the tax statutes." Regan v. Taxation With Representation of Washington, 461 U.S. 540, 547 (1983); see also Barter v. United States, 550 F.2d 1239, 1240 (7th Cir. 1977) (per curiam) (statutory difference in tax rates for married couples and single individuals does not violate due process of law of the Fifth Amendment; "perfect equality or absolute logical consistency between persons subject to the Internal Revenue Code [is not] a constitutional sine qua non"). Thus a tax statute's "presumption of constitutionality can be overcome only by the most explicit demonstration that a classification is a hostile and oppressive discrimination against particular persons and classes." Id. at 547 (quoting Madden v. Kentucky, 309 U.S. 83, 87-88 (1940)). "The burden is on the one attacking the legislative arrangement to negate every conceivable basis which might support it." Id. at 547-48. Finally, the rational basis justifying a statute against an equal protection claim need not be stated in the statute or in its legislative history; it is sufficient that a court can conceive of a reasonable justification for the statutory distinction. McDonald v. Board of Election Comm'n, 394 U.S. 802, 809 (1969).

Here, there is a reasonable basis for the net worth limitation. Congress may have established the limitation because it reasoned that larger estates would be in a better position to avoid the accrual

of interest charges by making an advance payment or posting a cash bond during the pendency of the IRS audit.

The Estate does not attack this justification as irrational but merely impractical. It contends that, by posting a bond or paying an advance, larger estates would be foregoing the opportunity to invest these funds and earn interest. Essentially, the Estate bemoans the opportunity cost of lost interest income. However, this complaint does not render the $2 million net worth distinction irrational. Congress can treat taxpayers unequally so long as there is a rational basis for the distinction. Given the limited resources of the judiciary, Congress may have sought to restrict judicial review to smaller estates with relatively limited financial resources--a nonarbitrary, reasoned distinction.

For these reasons, the decision of the Tax Court is affirmed.

/1 Abatement is permitted for extensive delays resulting from managerial acts of IRS officers or employees such as: the loss of records, personnel transfers, extended illnesses, extended per sonnel training, or extended leave. 14 Mertens Law of Fed. Income Tax'n sec. 50:72.

/2 We have used the parties' designation of "jurisdiction" as the issue, although whether the $2 million limit is truly jurisdictional--as opposed to a condition of suit, like a timely filing--is an open question.

/3 Unless otherwise indicated, all sections cited are part of the Internal Revenue Code.

/4 Congress enacted the erroneous subsection 7430(c)(4)(D) on August 5, 1997. When enacted, this subsection incorrectly referenced subparagraph 7430(c)(4)(A)(iii) rather than subparagraph (A)(ii). Prior to 1996, subsection (4)(A) contained three subparagraphs, but on July 30, 1996, Congress amended this subsection, striking paragraph (i) and renumbering subparagraphs (ii) and (iii) as (i) and (ii), respectively. See Taxpayer Bill of Rights 2, sec. 701(a), 110 Stat. at 1463. Due to the 1996 amendment of subsection (4)(A), when Congress amended subsection (4)(D) in 1997, subsection (4)(A) no longer contained a subparagraph (iii). However, the language of subsection

7430(c)(4)(A) remained the same, and the juris-
dictional requirement was spelled out in subpara-
graph sec. 7430(c)(4)(A)(ii).