**Kathleen L. BUERER, Plaintiff,**

v.

**UNITED STATES of America,
Defendant.**

**No. CIV. 1:00CV269.**

United States District Court,
W.D. North Carolina,
Asheville Division.

April 25, 2001.

Kathleen L. Buerer, Asheville, NC, pro
se.

Lawrence P. Blaskopf, U.S. Dept. of
Justice, Washington, DC, for defendant.

## *MEMORANDUM AND ORDER*

THORNBURG, District Judge.

**THIS MATTER** is before the Court on
Plaintiff's timely filed objections to the

Memorandum and Recommendation of United States Magistrate Judge Max O. Cogburn, Jr. Pursuant to standing orders of designation and 28 U.S.C. § 636, this Court referred Defendant's motion to dismiss to the Magistrate Judge for a recommendation as to disposition. Having conducted a *de novo* review of the Magistrate Judge's recommendation, the Court grants Defendant's motion.

## I. STATEMENT OF FACTS

Plaintiff sold her home in Takoma Park, Maryland, on April 25, 1997. Complaint, ¶ 3. At that time the law provided that gains realized from the sale of a home would be taxed, unless a more expensive home was purchased within two years. *Id.* On August 5, 1997, the Taxpayer Relief Act of 1997 ("the Act") was signed into law. *Id.* ¶ 4. One provision of the Act changed the tax liability levied on the sale of homes; Section 312 provided that the net gain from the sale of a home would be untaxed provided the gain was less than $250,000. *Id.* The Act provided the tax benefits conferred by Section 312 would extend retroactively to apply to the sale of homes which occurred on or after May 7, 1997. *Id.*

Plaintiff did not purchase a new home within two years of selling her Takoma Park residence, and thus became liable for the tax on the gains from the home sale. *Id.* ¶ 5. Plaintiff paid the tax under protest, stating her objections to the tax in a letter sent under the same cover. *Id.* Unable to receive a satisfactory response from the Internal Revenue Service as to why Congress had chosen May 7, 1997, as a "cutoff" date for home-sale tax relief, Plaintiff contacted the office of her congressional representative. *Id.* ¶¶ 8–9, 12. Congressman Charles Taylor's office informed Plaintiff that a news conference had been held on May 7, 1997, to announce the anticipated effective date of the pending tax legislation. *Id.* ¶ 12. According to press accounts of the news conference, the May 7 announcement was made " 'to eliminate some of the uncertainty' as to when the changes to the capital gains legislation would take effect." *Id.* ¶ 12.

Dissatisfied with the extent of retroactive tax relief provided by Congress in the Act, Plaintiff brought this action alleging violations of "the equal protection and due process clauses contained in the 14th and 5th Amendments." *Id.* ¶ 18.

## II. STANDARD OF REVIEW

A motion to dismiss under Fed.R.Civ.P. 12(b)(6) "tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of North Carolina v. Martin,* 980 F.2d 943, 952 (4th Cir.1992) (citations omitted). The motion should not be granted unless it appears that the plaintiff can prove no set of facts that would entitle her to relief. *See Mylan Labs., Inc. v. Matkari,* 7 F.3d 1130, 1134 (4th Cir.1993). Moreover, in considering the facts of the case for purposes of ruling on the Defendant's motion, the Court will view the pleadings and materials presented in the light most favorable to the Plaintiff, as the nonmoving party, assuming all factual allegations to be true. *See, e.g., Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984); *Mylan Labs, supra.* However, the Court need not accept as true "the legal conclusions drawn from the facts ... [or] unwarranted inferences, unreasonable conclusions, or arguments[.]" *Eastern Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship,* 213 F.3d 175, 180 (4th Cir.2000).

## III. DISCUSSION

■ Plaintiff's complaint is founded upon her belief that the effective date for

retroactive tax relief should be either December 31 or January 1 of any given year. *See* Response to Memorandum and Recommendation of Magistrate Judge ("Objections"), ¶ 3. Either of these dates would be "fairer," ' as taxes generally are levied upon individuals for their calendar-year income. *Id.* Though Plaintiff does not contest the general constitutionality of retroactive tax legislation, she "is not convinced that the selection of the date in question is based upon a rational determination of the amount of revenue needed to meet the financial needs of the nation." *Id.* ¶ 4. Plaintiff asserts the "time has come for the courts to review the civil rights of citizen taxpayers in the arena of 'economic policy' legislation[,] because Congress arguably has made a mess of it." *Id.* ¶ 13. Finally, Plaintiff urges that the Court review the Act under a "strict scrutiny" standard. *Id.* ¶ 9.

This Court will decline Plaintiff's invitation to overrule established Supreme Court precedent and invalidate on a whim legislation duly enacted by the co-equal branches of this Nation's government.

> [The United States Supreme Court] repeatedly has upheld retroactive tax legislation against a due process challenge. Some of [the Court's] decisions have stated that the validity of a retroactive tax provision under the Due Process Clause depends upon whether retroactive application is so harsh and oppressive as to transgress the constitutional limitation. The "harsh and oppressive" formulation, however, does not differ from the prohibition against arbitrary and irrational legislation that applies generally to enactments in the sphere of economic policy. The due process standard to be applied to tax statutes with retroactive effect, therefore, is the same as that generally applicable to retroactive economic legislation:

> "Provided that the retroactive application of a statute is supported by a legitimate legislative purpose furthered by rational means, judgments about the wisdom of such legislation remain within the exclusive province of the legislative and executive branches ...."

> "To be sure, ... retroactive legislation does have to meet a burden not faced by legislation that has only future effects .... 'The retroactive aspects of legislation, as well as the prospective aspects, must meet the test of due process, and the justification for the latter may not suffice for the former' .... But that burden is met simply by showing that the retroactive application of the legislation is itself justified by a rational legislative purpose." [*Pension Benefit Guaranty Corp. v. R.A. Gray & Co.*, 467 U.S. 717, 729–730, 104 S.Ct. 2709, 81 L.Ed.2d 601[ ] (1984) ] (quoting *Usery v. Turner Elkhorn Mining Co.*, 428 U.S. 1, 16–17, 96 S.Ct. 2882, 49 L.Ed.2d 752[ ] (1976)).

*United States v. Carlton*, 512 U.S. 26, 30–31, 114 S.Ct. 2018, 129 L.Ed.2d 22 (1994) (other citations omitted).

This Court does not hesitate to conclude that Congress' decision to limit the retroactive application of Section 312 to home sales occurring on or after May 7, 1997, is amply justified by a rational legislative purpose. *Cf. id.* at 36–37 (O'Connor, J., concurring) (**"Moreover, the subjective motivation of Members of Congress in passing a statute—to the extent it can even be known—is irrelevant in this context: It is sufficient for due process analysis if there exists *some* legitimate purpose underlying the retroactivity provision."**). Here, Congress set May 7, 1997, as the date to which the Act would retroactively apply in order to achieve the

legitimate goal of ensuring an adequate amount of revenue in relation to expenditures, all in the context of a recently reached balanced budget agreement between Congress and the President. *See* Motion to Dismiss, at 7–8. "There can be no dispute that the purpose of raising government revenue is a legitimate legislative purpose." *Quarty v. United States,* 170 F.3d 961, 967 (9th Cir.1999) (citing U.S. Const. art. I, § 8 & amend. XVI); *Carlton* 512 U.S. at 32, 114 S.Ct. 2018[ ]; *id.* at 37, 114 S.Ct. 2018[ ] (O'Connor, J., concurring) (**"Retroactive application of revenue measures is rationally related to the legitimate governmental purpose of raising revenue."**).

Congress' decision to retroactively apply the tax relief to, but not beyond, May 7, 1997—the date which they had previously announced as the effective date of the legislation—is an eminently reasonable means of furthering their legitimate goals. *See Carlton,* 512 U.S. at 33–34, 114 S.Ct. 2018. Plaintiff's objection that Congress should have extended the retroactive application of the Act to January 1, 1997, because "the statute was in the process of enactment from the first of the year," cuts against her: While notice of a pending change in the tax code is not dispositive, Plaintiff could have postponed the sale of her home if she was concerned that Congress might change the home-sale tax provisions of the code. *See Carlton,* 512 U.S. at 34, 114 S.Ct. 2018; *Quarty,* 170 F.3d at 968 (quoting *Gray,* 467 U.S. at 729, 104 S.Ct. 2709) (**"[O]ur cases are clear that legislation readjusting rights and burdens is not unlawful solely because it upsets otherwise settled expectations."**). Plaintiff's desire to reap the benefits of the change in the tax code is understandable, but of no moment to the Court's analysis of the constitutionality of the statute; "Tax legislation is not a promise, and a taxpayer has no vested right in the Internal Revenue Code." *Carlton,* 512 U.S. at 33, 114 S.Ct. 2018.

■ Plaintiff's challenge to the Act on the grounds that it violates the Fifth and Fourteenth Amendments to the Constitution is equally meritless. As an initial matter, "[t]he Fourteenth Amendment is not implicated here as this is a federal taxation issue and involves no state action." *Mostowy v. United States,* 966 F.2d 668, 672 (Fed.Cir.1992) (**adopting decision of the district court**); *NationsBank of Texas v. United States,* 44 Fed. Cl. 661, 666 (1999). "Unlike the Fourteenth Amendment, the Fifth Amendment does not contain an Equal Protection Clause. However, the Fifth Amendment's Due Process Clause does contain an equal protection component applicable to the federal government[,]" which is essentially the same in scope as that under the Fourteenth Amendment. *Estate of Kunze v. C.I.R.,* 233 F.3d 948, 954 (7th Cir.2000).

In considering a challenge to the constitutionality of a statute on Equal Protection grounds, this Court must be mindful of the following precepts:

> Legislation that neither employs a suspect class nor burdens a fundamental right is accorded a strong presumption of validity, and must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification. Moreover, the burden rests on the one challenging the legislation to disprove the existence of every conceivable basis which might support it. Rational basis review is thus a paradigm of judicial restraint, prohibiting [the Court] from sitting as a super-legislature to judge the wisdom or desirability of legislative policy determinations underlying the legislation. Once [the Court has] determined that there exists

a plausible reason for the congressional action—and regardless of whether that reasoning actually motivated Congress—our inquiry is at an end.

*Plyler v. Moore,* 100 F.3d 365, 373–74 (4th Cir.1996) (internal quotations and citations omitted). Indeed, " 'legislatures have especially broad latitude in creating classifications and distinction in the tax statutes.' " *Estate of Kunze,* 233 F.3d at 954 (quoting *Regan v. Taxation With Representation of Washington,* 461 U.S. 540, 547, 103 S.Ct. 1997, 76 L.Ed.2d 129[ ] (1983)) (citations omitted); *Ferman v. United States,* 993 F.2d 485, 492 (5th Cir. 1993) (**"Moreover, the Supreme Court observed long ago that '[n]o more essential or important power has been conferred upon the Congress [than the power to collect taxes and raise revenues,] and the presumption that an Act of Congress is valid applies with added force and weight to a levy of public revenue.'** *United States v. Jacobs,* 306 U.S. 363, 370, 59 S.Ct. 551, 83 L.Ed. 763[ ] (1939) (footnote omitted).").

■ Here, Congress' decision to extend the retroactive relief of the Act, which is in itself a matter of legislative grace rather than a matter of right or equity[1], to but not beyond May 7, 1997, was rationally related to the legitimate goal of facilitating personal financial planning and the orderly transfer of property. As noted *supra,* Congress announced on May 7, 1997, that, while the Act would not be passed and signed into law until some time in the future, the effective date of the Act would be set retroactively to May 7, 1997. Thus, the Congress ensured that individuals intent on selling their homes could do so immediately, without having to wait until the Act was officially passed and signed

into law. Had the Congress not taken this laudable step and announced before passage the effective date of the Act, the housing market could conceivably have ground to a veritable halt as individuals waited to sell their homes until the Act was passed in order to benefit from the capital gains exclusion. Clearly then, the Congress acted rationally to fulfill the "relied upon expectations of individuals" who had sold their homes after the tax relief contained in the Act and the effective date thereof was announced. *See Carlton,* 512 U.S. at 33, 114 S.Ct. 2018. Taken together with the need to balance revenue against expenditures in the context of a balanced budget agreement, see *supra,* actually extending the tax benefits contained in the Act to individuals who sold homes on or after May 7, 1997, as promised, satisfies the standards of rational basis review.

### IV. ORDER

**IT IS, THEREFORE, ORDERED** that Defendant's motion to dismiss is **ALLOWED,** and a Judgment dismissing Plaintiff's complaint is entered herewith.

### *JUDGMENT*

For the reasons set forth in the Memorandum and Order filed herewith,

**IT IS, THEREFORE, ORDERED, ADJUDGED AND DECREED** that the Defendant's motion to dismiss is **ALLOWED,** and the Plaintiff's complaint is hereby **DISMISSED WITH PREJUDICE** in its entirety.

---

1. *Mostowy v. United States,* 24 Cl.Ct. 193, 195 (1991) (quoting *Fortune v. United States,* 4 Cl.Ct. 670, 671 (1984)).