T.C. Summary Opinion 2004-41


UNITED STATES TAX COURT



CRAIG F. AND LYNN M. REHBERG, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent



Docket No. 16822-03S.            Filed March 29, 2004.


Craig F. Rehberg, pro se.

<u>Lisa M. Oshiro</u>, for respondent.



ARMEN, <u>Special Trial Judge</u>:  This case was heard pursuant to
the provisions of section 7463 of the Internal Revenue Code in
effect at the time that the petition was filed.[1]  The decision to
be entered is not reviewable by any other court, and this opinion
should not be cited as authority.

---

[1]  Unless otherwise indicated, all subsequent section
references are to the Internal Revenue Code in effect for 1994,
the taxable year in issue.

This matter is before the Court on the parties' cross-motions for partial summary judgment under Rule 121.[2]  The issue for decision is whether petitioners are liable for a tax liability that petitioners reported on their Form 1040X, Amended U.S. Individual Income Tax Return, for the taxable year 1994 (amended return).  We hold that they are.  Accordingly, as explained in detail below, we shall grant respondent's motion for partial summary judgment and deny petitioners' motion for partial summary judgment.

Background

The record establishes and/or the parties do not dispute the following:

At the time that the petition was filed, petitioners (hereinafter referred to individually as Mr. Rehberg or Mrs. Rehberg) resided in Bothell, Washington.

On October 19, 1994, petitioners sold their home near Seattle, Washington.[3]  Petitioners realized a gain of $53,226 from the sale of their home.[4]

On or about April 14, 1995, petitioners timely filed a joint

---

[2]  All Rule references are to Tax Court Rules of Practice and Procedure.

[3]  The evidence indicates that petitioners sold the house because they needed funds for Mrs. Rehberg's extensive medical bills.  Since 1988, Mrs. Rehberg has been suffering from progressive-remissive multiple sclerosis.

[4]  All amounts are rounded to the nearest dollar.

Form 1040, U.S. Individual Income Tax Return, for the taxable year 1994 (1994 tax return). On their 1994 tax return, petitioners excluded from gross income their $53,226 capital gain. By way of explanation, they attached Form 2119, Sale of Your Home, to their 1994 tax return. On Line 9 of Form 2119, petitioners marked "Yes" to the question: "If you haven't replaced your home, do you plan to do so within the replacement period?"[5]

Petitioners, however, did not purchase a replacement home within the replacement period.[6] On March 22, 2001, petitioners filed an amended return for the taxable year 1994. On the amended return, petitioners reported the $53,226 capital gain from the sale of their primary residence, and the tax due of $14,360 on the additional income. In Part II, Explanation of Changes to Income, Deductions, and Credits, of the amended

---

[5] Instructions for Form 2119 set forth additional filing requirements, which state, in pertinent part:

> You must file **Form 1040X**, Amended U.S. Individual Income Tax Return, for the year of sale with the second Form 2119 attached if **any** of the following apply:

> \* \* \* \* \* \* \*

> 2. You planned to replace your home when you filed your tax return but **did not** do so within the replacement period.

[6] For the year in issue, the replacement period begins 2 years before the date of the sale of a taxpayer's principal residence and ends 2 years after such date. Sec. 1034(a).

return, petitioners stated:

> Taxpayer [sic] sold their home in 1994 and reported the sale on Form 2119 attached to the original 1994 return. The Taxpayers have not replaced their home within the time limit proscribed [sic] by law and are amending their 1994 & 1999 returns to report the gain on the sale of the home on 1994 instead of 1999.[7]

Petitioners did not enclose payment with their amended return of any part of the liability reported therein.[8]

On April 23, 2001, respondent assessed against petitioners income tax in the amount of $14,360, as well as interest as provided by law, for the taxable year 1994.[9]  (We shall refer to the unpaid balance of the assessment for the taxable year 1994, as well as any accrued interest as provided by law, as petitioners' unpaid liability.  See Washington v. Commissioner, 120 T.C. 114, 116 (2003).)  On or about that same time, respondent sent petitioners a notice of balance due informing them that they had a liability for 1994 and requesting that they pay it.  Petitioners did not make any payment.

On July 3, 2002, respondent sent petitioners a Final Notice

---

[7] There is nothing in the record to explain petitioners' reference to their 1999 return.

[8] Generally, when a return of tax is made and an amount of tax is shown on the return, the person making the return shall, without assessment or notice and demand, pay such tax at the time and place the return is filed.  Sec. 6151(a).

[9] We note that respondent based the assessment on petitioners' amended return.  Sec. 6201(a)(1).  Respondent did not, therefore, need to send petitioners a notice of deficiency for the taxable year 1994.

Of Intent To Levy And Notice Of Your Right To A Hearing concerning petitioners' unpaid liability.

On July 29, 2002, petitioners timely filed with respondent Form 12153, Request for a Collection Due Process Hearing.

On May 13, 2003, Mr. Rehberg attended an administrative hearing conducted at respondent's Appeals Office in Seattle, Washington. Throughout petitioners' Appeals consideration, the parties exchanged substantial correspondence concerning petitioners' distressed financial situation and collection alternatives.

On August 28, 2003, the Appeals Office sent petitioners a Notice of Determination Concerning Collection Action(s) Under Sections 6320 and/or 6330 (notice of determination) concerning petitioners' unpaid liability. In the notice of determination, the Appeals Office stated that respondent's determination to proceed with collection by way of levy should be sustained.

On October 1, 2003, petitioners filed a Petition for Lien or Levy Action Under Code Section 6320(c) or 6330(d) challenging respondent's determination.[10] In the petition, petitioners state:

> Liability is for capital gains taxes on our primary
> residence.
> -Asking for relief under 1997 law for one time
> exclusion of capital gains tax for sale of residence.

_____

[10] The petition was timely mailed to the Court on Sept. 26, 2003. Secs. 6330(d), 7502(a).

Lynn M. Rehberg has chronic illness (probable multiple sclerosis) since 1989. This led to sale of house and contributed greatly to our financial burden.
-Possibly past (3) year deadline for collecting the tax.

As stated, the parties filed cross-motions for partial summary judgment. The issue for decision in this opinion is whether petitioners are liable for their unpaid liability.

Discussion

A partial summary adjudication may be made that does not dispose of all the issues in a case if it is shown, inter alia, that there is no genuine issue of material fact with respect to the question on which partial summary adjudication is sought. Rule 121(b); Sundstrand Corp. v. Commissioner, 98 T.C. 518, 520 (1992), affd. 17 F.3d 965 (7th Cir. 1994). Based on our review of the record, we are satisfied that there is no genuine issue as to any material fact and that partial summary judgment may be rendered as a matter of law.

A taxpayer may challenge the existence or amount of the underlying tax liability in a levy case if the taxpayer did not receive a statutory notice of deficiency or did not otherwise have an opportunity to dispute such tax liability. Sec. 6330(c)(2)(B), as effective for collection actions initiated after January 18, 1999; Montgomery v. Commissioner, 122 T.C. 1 (2004). In the instant case, petitioners may challenge their underlying liability because they did not receive a statutory

notice of deficiency for 1994 or otherwise have an opportunity to dispute their unpaid liability for that year.  Consequently, we shall review de novo.  Sego v. Commissioner, 114 T.C. 604, 610 (2000).

For the year in issue, section 1034(a) provides, in general, for the complete nonrecognition of gain if the replacement residence having a cost at least equal to the adjusted sale price of the old residence was purchased within 2 years before or after the sale of the old principal residence.[11]  Section 1034(j) governs the statutory period for the assessment of any deficiency attributable to a gain from the sale of a taxpayer's primary residence.  Section 1034(j) provides, in pertinent part, as follows:

> (1) the statutory period for the assessment of any deficiency attributable to any part of such gain shall not expire before the expiration of 3 years from the date the Secretary is notified by the taxpayer (in such manner as the Secretary may by regulations prescribe) of--
>
> *   *   *   *   *   *   *
>
> (B) the taxpayer's intention not to purchase a new residence within the period specified in subsection (a), or

_____

[11]  Sec. 312(b) of the Taxpayer Relief Act of 1997 (TRA 1997), Pub. L. 105-34, 111 Stat. 839, repealed the sec. 1034 rollover provision generally effective for sales and exchanges of principal residences after May 6, 1997.  TRA 1997 sec. 312(a), 111 Stat. 836, replaced the sec. 1034 rollover provision with a revised and expanded sec. 121 generally effective for sales and exchanges after May 6, 1997.

(C) a failure to make such purchase within such period; and

(2) such deficiency may be assessed before the expiration of such 3-year period notwithstanding the provisions of any other law or rule of law which would otherwise prevent such assessment. [Emphasis added.]

Petitioners do not dispute that their tax liability was what they themselves reported on their amended return. Petitioners first contend, however, that respondent assessed them for their unpaid liability beyond the 3-year period of limitations for assessment. See sec. 6501(a). In support of this contention, petitioners contend that the 3-year period of limitations began on or about April 14, 1995, when petitioners filed their 1994 tax return, and expired on or about April 14, 1998. Respondent, however, argues that the assessment of petitioners' unpaid liability was timely under section 1034(j). We agree with respondent.

On or about April 14, 1995, petitioners timely filed their 1994 tax return notifying respondent of their intention to roll over the gain from the sale of their home into a new residence. See sec. 1034(a). Petitioners, however, did not at any time roll over their gain into the purchase of a new home. On March 22, 2001, petitioners filed an amended return notifying respondent that they failed to purchase a replacement home within the specified time period under section 1034(a), and petitioners reported the gain realized from the sale of their home in 1994.

On April 23, 2001, respondent assessed against petitioners the amount of tax reported on their amended return. As such, the assessment in this case is attributable in its entirety to the gain that petitioners realized on the sale of their home in 1994. The period of limitation for the assessment of such gain is, therefore, governed by section 1034(j). Applying section 1034(j) to the facts of this case, respondent's 3-year period of limitations to assess the tax for the taxable year 1994 began on March 22, 2001, when petitioners notified respondent that they failed to purchase a replacement home. Respondent assessed petitioners on April 23, 2001. We conclude that respondent's assessment of petitioners' unpaid liability was made within the period of limitations.

In the alternative, petitioners request an "exemption under the 1997 tax law allowing a one-time exclusion of the capital gains tax resulting from the sale of a residence."[12] In their motion, petitioners state, in pertinent part, as follows:

> a. The sale of the petitioner's residence was for medical concerns. To the petitioner's understanding the one time exclusion tax law was enacted, in part, to allow homeowners the use of the capital gains from their primary residence to pay medical expenses. The petitioner's have met this intent of the law.

Respondent, however, contends that petitioners do not qualify for

---

[12] For the year in issue, sec. 121 provides a taxpayer, who attained the age of 55, a one-time exclusion of gain up to $125,000 from the sale of a principal residence. We note that petitioners had not attained the age of 55 in 1994.

the one-time exclusion under the 1997 tax law.  We agree with respondent.

In general, TRA 1997 sec. 312(a), 111 Stat. 836, amended section 121 of the Internal Revenue Code to allow a taxpayer to exclude from income up to $250,000 ($500,000 for married individuals filing jointly) of gain on the sale of a residence. Further, TRA 1997 section 312(a) provided a prorated exclusion by reason of a change in place, health, or unforeseen circumstances. Section 312 of TRA 1997 is effective for sales and exchanges after May 6, 1997.  TRA 1997 sec. 312(d), 111 Stat. 841.

In the instant case, petitioners sold their home on October 19, 1994.  Petitioners, however, did not purchase a replacement home because they exhausted their finances on Mrs. Rehberg's medical bills.  Petitioners contend that using the gain from the sale of their home to pay for medical expenses comports with the the intent of TRA 1997.  Unfortunately, petitioners' date of sale is well before May 6, 1997, which is the effective date of TRA 1997.  Although we are sympathetic to petitioners' plight, this Court is without authority to extend the effective date of TRA 1997 to afford petitioners the benefits provided under the statute.  Buerer v. United States, 141 F. Supp.2d 611 (W.D.N.C. 2001) (denying relief to a taxpayer who sold her home on April 25, 1997); see, e.g., Henry v. Commissioner, T.C. Memo. 1982-469 n.2 ("the Courts are without authority to weigh the merits of the

events precipitating delay to determine whether the time limits may be waived or extended").

We have considered all of the other arguments made by the parties, and, to the extent that we have not specifically addressed them, we conclude they are without merit.

In conclusion, we think it appropriate to observe that we found taxpayers to be very conscientious taxpayers who obviously take their Federal tax responsibilities quite seriously. We are sympathetic to the hardship that Mrs. Rehberg's medical condition has brought to petitioners' lives, and we acknowledge that petitioners used their capital gains for laudable purposes. Nevertheless, we are constrained to grant respondent's motion based on the applicable law.

For the reasons stated, we shall grant respondent's motion for partial summary judgment and deny petitioners' motion for partial summary judgment.

In closing, we note that petitioners have offered a collection alternative in the form of an offer in compromise, which respondent is currently evaluating. If the parties are unable to agree on this (or another) collection alternative, then the Court will, in due course, calendar this case for trial on all relevant issues other than the existence or amount of petitioners' underlying tax liability.

Reviewed and adopted as the report of the Small Tax Case

Division.

To reflect the foregoing,

An appropriate order

will be issued.