154 T.C. No. 6


UNITED STATES TAX COURT


SANDRA M. CONARD, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 27571-10.                                    Filed March 10, 2020.



        P received $61,777 in distributions from a qualified retirement plan in 2008, when P was not yet 59-1/2 years old, was not disabled, and was not eligible for any of the exceptions under I.R.C. sec. 72(t)(2) to the additional tax imposed by I.R.C. sec. 72(t)(1).

        R mailed P a statutory notice of deficiency showing a deficiency of $6,177 for the 2008 tax year, attributable to the additional tax under I.R.C. sec. 72(t)(1) on the distributions P had received that year.  P timely filed a petition seeking review of the deficiency and now challenges the additional tax under I.R.C. sec. 72(t)(1) on grounds that applying the tax to her distributions violates the equal protection component of the Due Process Clause of the Fifth Amendment to the United States Constitution.

        <u>Held</u>:  The age and disability classifications under I.R.C. sec. 72(t)(2) involve neither a substantive constitutional right or freedom nor a suspect classification.  Therefore, we review the

constitutional validity of I.R.C. sec. 72(t), as applied to P, under the rational-basis test.

Held, further, as applied to P, I.R.C. sec. 72(t) is valid because the age and disability classifications established by the statute bear a reasonable relationship to a legitimate Government purpose.

Sandra M. Conard, pro se.

Scott W. Forbord and Mark J. Miller, for respondent.

OPINION

TORO, Judge: A taxpayer who receives a distribution from a qualified retirement plan during a taxable year generally must, under the first paragraph of section 72(t),[1] pay for that year an additional tax equal to 10% of the taxable portion of the distribution.[2] Sec. 72(t)(1). But, under the second paragraph of

---

[1]Unless otherwise noted, all section references are to the Internal Revenue Code in effect at all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure. We round all monetary amounts to the nearest dollar.

[2]This additional tax has been referred to informally as the "early withdrawal tax penalty." See, e.g., Joshua D. Blank & Leigh Osofsky, "Simplexity: Plain Language and the Tax Law," 66 Emory L.J. 189, 225 (2017). For an overview of the rules of section 72(t) as applied to one type of qualified retirement plan--an individual retirement account ("IRA")--see Boris I. Bittker, Martin J. McMahon,

(continued...)

section 72(t), the additional tax does not apply to certain distributions described in that paragraph. Sec. 72(t)(2). Among the distributions described there are those made to a taxpayer who is at least 59-1/2 years old or disabled at the time of the distributions. Sec. 72(t)(2)(A)(i), (iii).

In this deficiency case brought under section 6213(a), we are asked to decide whether applying the additional tax imposed by the first paragraph of section 72(t) to distributions made to a taxpayer who, at the time of the distributions, was not yet 59-1/2 years old, was not disabled, and was otherwise not eligible for any of the other exceptions described in the second paragraph of section 72(t), violates the equal protection component of the Due Process Clause of the Fifth Amendment to the United States Constitution. We hold that it does not.

---

[2](...continued)
Jr. & Lawrence A. Zelenak, Federal Income Taxation of Individuals, para. 40.05[1] (3d ed. 2002 & 2020 Cum. Supp. No. 1). As relevant here, the discussion in that overview generally applies to other types of qualified retirement plans as well.

## Background

The parties submitted this case fully stipulated under Rule 122. The facts described below are based on the pleadings and the parties' stipulation of facts (including the exhibits attached thereto).[3]

Petitioner Sandra Conard was a resident of Wisconsin at the time her petition was filed. In 2008, when she was not yet 59-1/2 years old, was not disabled, and was not eligible for any of the exceptions described in section 72(t)(2), Ms. Conard received nine distributions totaling $61,777 from a qualified retirement plan. Ms. Conard reported the distributions in her Federal income tax return for that year, but she neither reported nor paid with that return the additional tax imposed by section 72(t)(1). Instead, Ms. Conard included with the return a statement that the additional tax was arbitrary and capricious, and she claimed a refund of the additional tax under section 72(t)(1) that she had paid for 2005, 2006, and 2007.

Respondent issued a statutory notice of deficiency for 2008 (the "Notice"), showing a deficiency of $6,177 attributable to a "10% tax on premature

---

[3]The parties' stipulation of facts with accompanying exhibits is incorporated herein by this reference.

distributions from a qualified retirement plan."[4]  Ms. Conard timely filed a petition seeking our review.  She maintains that, in light of the exceptions set out in section 72(t)(2)--particularly the exceptions for distributions made to taxpayers who are at least 59-1/2 years old or who are disabled--applying section 72(t)(1) to the distributions that she received violates "the U.S. Constitution's guarantee of equal treatment under the law."

## Discussion

We begin our evaluation of Ms. Conard's contention by reviewing the text of the relevant constitutional provisions and the framework established by the Supreme Court for considering equal protection claims.  We then apply that framework to the distinctions Congress drew in section 72(t) with respect to the treatment of qualified retirement plan distributions made to taxpayers who are either at least 59-1/2 years old or disabled.

I.     Text of the Relevant Constitutional Provisions and Framework for Analysis

The Due Process Clause of the Fifth Amendment to the United States Constitution provides that no person shall be "deprived of life, liberty, or property, without due process of law."  U.S. Const. amend. V.  "The Due Process Clause

---

[4]The Notice also determined an accuracy-related penalty under section 6662, but respondent has since conceded that Ms. Conard is not liable for that penalty.

imposes on the Federal Government requirements comparable to those that the Equal Protection Clause of the Fourteenth Amendment imposes on the states." Regan v. Taxation With Representation of Wash., 461 U.S. 540, 542 n.2 (1983) (citing Schweiker v. Wilson, 450 U.S. 221, 226 n.6 (1981)).  That clause in turn prohibits a State from "deny[ing] to any person within its jurisdiction the equal protection of the laws."  U.S. Const. amend. XIV, sec. 1.

The Supreme Court has established a comprehensive framework for evaluating equal protection claims regarding statutes affecting economic rights, such as section 72(t).  The U.S. Court of Appeals for the Seventh Circuit, to which an appeal in this case would lie unless the parties agree otherwise, see sec. 7482, has aptly summarized that framework in reviewing another decision of this Court:

> Statutes affecting economic rights which neither invade a substantive Constitutional right or freedom nor utilize a suspect classification such as race are subject to only a low level of judicial scrutiny--the rational basis test.  See Exxon Corp. v. Eagerton, 462 U.S. 176, 195-96 (1983).  Under that test "a statute will be sustained if the legislature could have reasonably concluded that the challenged classification would promote a legitimate state purpose."  Id. at 196.

> Moreover, "[l]egislatures have especially broad latitude in creating classifications and distinctions in the tax statutes."  Regan v. Taxation With Representation of Washington, 461 U.S. 540, 547 (1983); see also Barter v. United States, 550 F.2d 1239, 1240 (7th Cir. 1977) (per curiam) (statutory difference in tax rates for married couples and single individuals does not violate due process of law of the Fifth Amendment; "perfect equality or absolute logical

consistency between persons subject to the Internal Revenue Code [is not] a constitutional sine qua non"). Thus a tax statute's "presumption of constitutionality can be overcome only by the most explicit demonstration that a classification is a hostile and oppressive discrimination against particular persons and classes." Id. at 547 (quoting Madden v. Kentucky, 309 U.S. 83, 87-88 (1940)). "The burden is on the one attacking the legislative arrangement to negate every conceivable basis which might support it." Id. at 547-48. Finally, the rational basis justifying a statute against an equal protection claim need not be stated in the statute or in its legislative history; it is sufficient that a court can conceive of a reasonable justification for the statutory distinction. McDonald v. Board of Election Com'rs of Chicago, 394 U.S. 802, 809 (1969).

Estate of Kunze v. Commissioner, 233 F.3d 948, 954 (7th Cir. 2000), aff'g T.C. Memo. 1999-344.[5]

This Court follows the same framework in evaluating equal protection claims regarding statutes affecting economic rights. See Ruggere v. Commissioner, 78 T.C. 979, 987 (1982) (stating that, for classifications involving neither a "fundamental interest [n]or a suspect classification[,] * * * the proper level for review is the rational-basis test--i.e., whether the classification bears a reasonable relationship to some legitimate Government purpose").

---

[5]Other Courts of Appeals follow the same framework. See, e.g., Young v. United States, 332 F.3d 893, 895-896 (6th Cir. 2003); Edwards v. Valdez, 789 F.2d 1477, 1482-1483 (10th Cir. 1986); Grauvogel v. Commissioner, 768 F.2d 1087, 1089 (9th Cir. 1985); Richards v. Commissioner, 745 F.2d 524, 525-526 (8th Cir. 1984), aff'g T.C. Memo 1984-124; Burke Mountain Acad., Inc. v. United States, 715 F.2d 779, 782-783 (2d Cir. 1983).

II.     Application of Section 72(t)

Having set out the relevant framework that governs our analysis, we turn next to applying that framework to the facts in this case.  Ms. Conard does not contend that section 72(t) concerns a substantive constitutional right or freedom. And that is understandable, as the taxation of funds distributed from a qualified retirement plan does not implicate a substantive constitutional right or freedom. Neither does she argue that section 72(t) relies on any suspect classifications. That too is understandable, as the courts have consistently held that age is not a suspect classification for purposes of the equal protection analysis.  Kimel v. Fla. Bd. of Regents, 528 U.S. 62, 83 (2000) ("[A]ge is not a suspect classification under the Equal Protection Clause.") (citing Gregory v. Ashcroft, 501 U.S. 452, 470 (1991), Vance v. Bradley, 440 U.S. 93, 97 (1979), and Mass. Bd. of Ret. v. Murgia, 427 U.S. 307, 313-314 (1976)); Kimel, 528 U.S. at 83 ("States may discriminate on the basis of age without offending the Fourteenth Amendment if the age classification in question is rationally related to a legitimate state interest."); see also Levin v. Madigan, 692 F.3d 607, 619 (7th Cir. 2012) ("[B]ecause age is not a suspect classification, an equal protection claim of age discrimination in employment is subject only to rational basis review, in which the age classification must be rationally related to a legitimate state interest.").

Similarly, able-bodied persons are not a suspect class. Indeed, courts have held that even "the disabled are not a suspect or quasi-suspect class." See, e.g., United States v. Harris, 197 F.3d 870, 876 (7th Cir. 1999) (applying City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432 (1985), and citing More v. Farrier, 984 F.2d 269, 271 (8th Cir. 1993), DeVargas v. Mason & Hanger-Silas Mason Co., 844 F.2d 714, 725 (10th Cir. 1988), Cal. Ass'n of the Physically Handicapped, Inc. v. FCC, 721 F.2d 667, 670 (9th Cir. 1983), and Brown v. Sibley, 650 F.2d 760, 765-766 (5th Cir. 1981)). Accordingly, section 72(t) as applied to Ms. Conard is subject to the rational-basis test.

Under that test, the statute is presumed to be constitutional and must be upheld so long as the legislature "could have reasonably concluded that the challenged classification would promote a legitimate * * * [Government] purpose." Estate of Kunze v. Commissioner, 233 F.3d at 954 (quoting Exxon Corp. v. Eagerton, 462 U.S. 176, 196 (1983)). Section 72(t) easily clears that hurdle.

This is not a case where the Court needs to "conceive of a reasonable justification for the statutory distinction," Estate of Kunze v. Commissioner, 233 F.3d at 954 (citing McDonald v. Bd. of Election Comm'rs of Chi., 394 U.S. 802,

809 (1969)), without any help from those involved in the drafting of the law.[6]  In

proposing the enactment of section 72(t) as part of what became the Tax Reform

Act of 1986 (TRA), Pub. L. No. 99-514, sec. 1123(a), 100 Stat. at 2472, the Senate

Finance Committee reasoned that "[t]he absence of withdrawal restrictions in the

case of some tax-favored arrangements allows participants in those arrangements

to treat them as general savings accounts with favorable tax features rather than as

retirement savings arrangements."  S. Rept. No. 99-313, at 612 (1985), 1986-3

---

[6]Under the framework described above, section 72(t) could survive judicial review even if the only reasons in its support were ones conceived by the Court. The Supreme Court has never required Congress to "articulate its reasons for enacting a statute," particularly where it "must necessarily engage in a process of line-drawing."  See U.S. R.R. Ret. Bd. v. Fritz, 449 U.S. 166, 179 (1980); see also McDonald v. Bd. of Election Comm'rs of Chi., 394 U.S. 802, 809 (1969) (legitimate State purpose may be ascertained even when the legislative or administrative history is silent).  But, as described further in the text, the drafting history of section 72(t) sheds light on the basis for the line-drawing reflected in the statute and provides a reasonable justification for the statutory distinction.

C.B. (Vol. 3) 612 (1985).[7]  In proposing the age- and disability-based exceptions

at issue in this case, the Committee explained its reasoning as follows:

> Although the committee recognizes the importance of encouraging taxpayers to save for retirement, the committee also believes that tax incentives for retirement savings are inappropriate unless the savings generally are not diverted to nonretirement uses. One way to prevent such diversion is to impose an additional income tax on early withdrawals from tax-favored retirement savings arrangements in order to discourage withdrawals and to recapture a measure of the tax benefits that have been provided.  Accordingly, the Committee believes it appropriate to apply an early withdrawal tax to all tax-favored retirement arrangements.  * * *

S. Rept. No. 99-313, supra at 613, 1986-3 C.B. (Vol. 3) at 613.

Similarly, in connection with the enactment of a prior version of

section 72(m)(5),[8] which pre-dated section 72(t) but contained similar age- and

---

[7]The Tax Reform Act of 1986 (TRA), Pub. L. No. 99-514, 100 Stat. 2085, generally extended to early distributions from all qualified retirement plans the additional tax that previously applied to early distributions from IRAs and early distributions under individual retirement annuities.  Compare section 72(t), with former section 408(f), before its repeal by TRA section 1123(d)(2), 100 Stat. at 2475.  Former section 408(f) reflected the realization that "[p]remature distributions from IRAs frustrate the intention of saving for retirement" and an additional tax on such distributions would "discourage[] this from happening." Dwyer v. Commissioner, 106 T.C. 337, 340 (1996) (citing S. Rept. No. 93-383, at 134 (1974), 1974-3 (Supp.) C.B. 80, 213).

[8]Section 72(m)(5) was initially enacted as part of the Self-Employed Individuals Tax Retirement Act of 1962, Pub. L. No. 87-792, sec. 4(b), 76 Stat. at 821-824, under the heading "Penalties applicable to certain amounts received by owner-employees."  Before it was later amended by TRA sec. 1123(d)(1), 100

(continued...)

disability-based exceptions, the Senate Finance Committee explained that the statute aimed "to provide means for financing retirement" and that the statute's penalties for early withdrawals were "designed to insure that retirement plans will not be used for other purposes." S. Rept. No. 87-992, at 23 (1961), 1962-3 C.B. 303, 325.

These explanations are entirely rational. If taxpayers face no disincentive for withdrawing amounts from qualified retirement plans long before their retirement years and without suffering any disability, it is easy to imagine that such amounts might be "diverted to nonretirement uses," thereby frustrating Congress' objective of encouraging taxpayers to save for periods of their lives when they might not be able, or wish, to work. By the same token, allowing a disabled person--defined by the statute as a person who "is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or to be of long-continued and indefinite duration," sec. 72(t)(2)(A)(iii), (m)(7)--to receive

---

[8](...continued)
Stat. at 2475, the provision applied an additional tax to "amounts * * * received from a qualified trust * * * by an individual, who is, or has been, an owner-employee, before such individual attains the age of 59½ years, for any reason other than the individual's becoming disabled." Sec. 72(m)(5)(A)(i) (before amendment).

distributions from a qualified retirement plan without paying the additional tax would be fully consistent with Congress' objective of encouraging taxpayers to provide for times when they might not be able to work.[9]  Although section 72(t) provides different rules for differently situated taxpayers, as we have acknowledged before, "[n]o scheme of taxation * * * has yet been devised which is free of all discriminatory impact."  Druker v. Commissioner, 77 T.C. 867, 872 (1981) (quoting San Antonio Indep. Sch. Dist. v. Rodriguez, 411 U.S. 1, 42 (1973)), aff'd in part on this issue, rev'd in part on another issue, 697 F.2d 46 (2d Cir. 1982).

In short, Ms. Conard has failed to carry her heavy burden of "'negat[ing] every conceivable basis which might support'" the legislative arrangement under section 72(t).  Estate of Kunze v. Commissioner, 233 F.3d at 954 (quoting Taxation With Representation of Wash., 461 U.S. at 548).  Applying the section 72(t) additional tax to the qualified retirement plan distributions Ms. Conard received in 2008, while she was not yet 59-1/2, was not disabled, and was

---

[9]Even if we were to disagree with where Congress drew the relevant lines in this area, and we do not, the rational-basis standard "does not allow us to substitute our personal notions of good public policy for those of Congress." Schweiker v. Wilson, 450 U.S. 221, 234 (1981).  Mere "belief that an Act of Congress may be inequitable or unwise is * * * an insufficient basis on which to conclude that it is unconstitutional."  Schweiker v. Hogan, 457 U.S. 569, 589 (1982).

otherwise not eligible for any of the other exceptions described in section 72(t)(2), does not violate the equal protection component of the Due Process Clause of the Fifth Amendment.[10]  Accordingly, we sustain the deficiency determined by respondent.[11]

To reflect the foregoing,

Decision will be entered for

respondent as to the deficiency and for

petitioner as to the accuracy-related penalty

under section 6662(a).

---

[10]This conclusion is consistent with the conclusion reached in Pulliam v. Commissioner, T.C. Memo. 1996-354.

[11]Consistent with this holding, we also conclude that no refund is due to Ms. Conard for the year 2008, the only year over which we have jurisdiction in this case.